

Eastern District of Kentucky
FILED
SEP 29 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-430-GWU

KYLE ZUNDA,            PLAINTIFF,

VS.          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,         DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Zunda

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

Zunda

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

Zunda

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Zunda suffered from degenerative disc disease, major depression and an anxiety disorder (Tr. 18) and was restricted to a limited range of medium level work (Tr. 21). He determined that, based on vocational expert testimony, the plaintiff was able to perform his past work or significant numbers of alternative jobs in the economy. (Tr. 20-21). Thus, the claim for benefits was denied. (Tr. 23)..

The plaintiff argued that he was disabled in part due to cardiac, back and stomach problems.

Progress notes from one treating source, the Appalachian Regional Hospital, show that the plaintiff had a history of a normal spinal x-ray and CT scan as of 2003, despite complaints of back pain (Tr. 75, 77), and that a subsequent MRI showed no signs of a herniated disc or spinal stenosis (Tr. 87). There were some degenerative changes, of an unspecified degree. (Tr. 87). The patient was unable to go to physical

7

therapy as ordered by the doctor, in part, because he lacked car insurance. (Tr. 89). A progress note for January, 2005 indicated that the plaintiff continued to complain of back pain, and exhibited a decrease in range of motion to an unspecified degree. (Tr. 168). While no specific, physician-ordered activity restrictions were noted in the progress notes, a physician's assistant at the clinic submitted a form, referencing the MRI report, and indicating that Zunda was not capable of performing full-time work at the sedentary level. (Tr. 165-166).

An orthopedic examination was performed by Consultative Examiner Bobby Kidd in mid-2004. (Tr. 98). Kidd noted that the plaintiff would not attempt many of the range of motion movements for physical examination; however, Zunda exhibited no evidence of spasm, motor weakness, or sensory loss. (Tr. 100-101). On his evaluation form, he indicated "NA" to virtually all the functional capacity assessment questions, although he noted no restrictions on heights, temperature changes, humidity or pulmonary irritants. (Tr. 102). An earlier consultative examination had been done by Mark Burns in 2001; the examiner noted that regular x-rays showed only very minimal degenerative changes and found his orthopedic examination to be within normal limits, including normal grip and manipulation, lower muscular extremity strength and range of motion of the lumbar spine. (Tr. 267). Burns opined that the plaintiff had the ability to perform activities involving sitting, standing, moving about, lifting, carrying, handling objects and hearing. (Tr. 268).

8

Zunda

A single progress note from the Prime Time Clinic in Harlan was introduced as Exhibit 1F, but these concerned the plaintiff's palpitations and insomnia and do not contain work-related activity restrictions. (Tr. 252).

Exhibit 2 F contains more notes from the ARH. However, while revealing that the plaintiff had mitral valve prolapse, do not offer limitations on his work activity. (Tr. 254-257). Indeed, the physician diagnosing the condition indicated in another progress note that the plaintiff was to limit consuming caffeine, but made no overt reference to other restrictions related to his work. (Tr. 351).

It is certainly obvious from the administrative record that no treating physician suggested limitations beyond what were considered by the ALJ, and information from the earliest consultative examiner appears to suggest there were minimal limitations. A non-examining medical reviewer opined that the plaintiff's physical condition was "less than severe." (Tr. 279). The plaintiff argues that the opinion of the physician's assistant was improperly discounted, albeit he concedes that the opinion is not from an "acceptable medical source" as per 20 C.F.R. 416.913. The ALJ did give other reasons to discount the opinion, including that it was inconsistent with other physician's opinions (i.e., the consultative examiners), not consistent with medical tests (i.e., x-rays, CT scans or MRIs showing minimal or an unspecified degree of degenerative changes and no herniations or stenosis).

Thus, the ALJ properly assessed the plaintiff's physical condition.

Zunda

As far as Zunda's mental status was concerned, the record shows that the plaintiff sought treatment at the Cumberland River Comprehensive Care Center to from March, 2001 to October, 2003. Originally, a GAF of 60 (Tr. 277), consistent with moderate symptoms as per the [DSM}, was noted by his psychiatrist. In April, 2001 a progress note indicated that the patient had decided to apply for disability "for unclear reasons." (Tr. 273). A GAF of 55 (Tr. 274), also consistent with moderate symptoms was later cited. That June, his psychiatrist noted that he "stays home most of the time and has no motivation to seek outside employment" and planned to refer his patient to Vocational Rehabilitation. (Tr. 271). In July, progress note referred to mild symptoms of depression and anxiety. (Tr. 270). In September he was described as "stay[ing] with his wife all the time and is not motivated to seek any kind of employment." (Tr. 337). A GAF of 60 was noted on a team review in November, 2001 (Tr. 332), the same months that he offered no complaints and was "awaiting decision on Social Security disability claims" (Tr. 333).. In early 2002, his psychiatrist again noted that he was not motivated to seek any employment. (Tr. 326). In December, 2002, his treating psychiatrist described him as "not motivated to seek employment [. . .despite denying] any specific complaints" and indicated that he should be referred to Vocational Rehabilitation as "I am not surprised why this young man doesn't work." (Tr. 138). A GAF of 55 was noted that month with diagnoses of major depression and generalized anxiety. (Tr. 139, 145). Thus, this

10

treating source provided information consistent with no more than moderate symptoms and commentary indicating that the plaintiff could perform some work.

Two consultative examiners analyzed the plaintiff. Consultative Examiner Kevin Eggerman saw the plaintiff in 2001. He notes as a part of patient history that the plaintiff had applied for work as recently as the previous year, but had not received any offers. (Tr. 258). While the plaintiff was mildly defensive and irritable, Eggerman felt that his anxiety level seemed exaggerated. (Tr. 261). His range of affect was not depressed and his IQ was estimated to have been low average to high borderline. (Tr. 261). He noted only some undefined "fair" abilities, but cited current and past GAF scores of 65-70, consistent with mild symptoms as per the {DSM}. Another consultative examiner, Annette Freel, examined the plaintiff in December, 2004. She reported that the patient gave poor effort on WAIS-III testing, resulting in invalid scores in the 40s. (Tr. 157). He was uncooperative and malingering was ultimately the only diagnosis. (Tr. 157-158). The examiner noted that the claimant presented himself as totally incompetent and not able to understand instructions, which was not a reasonable representation. (Tr. 159). She concluded that the claimant "may have a legitimate medical problem, but may be amplifying his cognitive symptoms with non-credible psychological symptoms to ensure attention and treatment, which may be influencing his test taking effort. . ." (Tr. 159). Ultimately, based on a review of records she assessed "limited but

Zunda

satisfactory" abilities in all areas, except handling complex or detailed instructions. (Tr. 161-162).

Zunda's school records suggested low grades, particularly after the fifth grade (Tr. 249), but no IQ testing or notations about Special Education.

Thus, the limitations in the hypothetical question given to the vocational expert (Tr. 417) were consistent with information in the record, certainly including, Eggerman's opinion and the fact that his treating psychiatrist did not appear to support his claim of disability and endorsed moderate symptomology.

The decision will be affirmed.

This the ___29___ day of September, 2006.

G. WIX UNTHANK,
Senior Judge